# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ARTISAN AND TRUCKERS CASUALTY CO.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**TIMOTHY THROGMORTON, M.D.,** Administrator of the Estate of James Allen Throgmorton, II, and **BRITTANY OSCHMANN,**<br><br>**Defendants.** | Case No. 23-cv-02485-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court are two separate motions. On April 4, 2024, plaintiff Artisan and Truckers Casualty Co. ("Artisan") filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 26). On May 7, 2024, Defendants Timothy Throgmorton, M.D., as Administrator of the Estate of James Allen Throgmorton II, and Brittany Oschmann, collectively referred to as "Defendants" filed a Motion for Partial Summary Judgment on Count I of their counterclaim. (Doc. 31). For the reasons set forth below, the Court **GRANTS** Defendants' motion and **DENIES** Artisan's motion.

### BACKGROUND

This is an action for declaratory judgment filed by Artisan to determine whether it has a duty under its insurance policy to provide underinsured motorist

("UIM") coverage benefits to Defendants. (Doc. 1). Artisan issued a policy commercial auto coverage, number 01836274-0, to Giant City Transport LLC for the effective policy period of June 15, 2020 to December 15, 2020 ("the Artisan policy") (Doc. 1, ¶ 23).

### A. Underlying Accident

On August 14, 2020, on or about 2:45 p.m., James Throgmorton II, Defendants' decedent ("decedent"), was operating a Ford Prius westbound on U.S. 160 as the rear escort for a tractor trailer carrying an oversized load. (Doc. 1-1, ¶ 12). At the time of the accident, decedent was operating the Prius in the course and scope of his employment. (Doc. 1, ¶ 22). Decedent stopped the Prius while the load was crossing a bridge, and the Prius was struck in the rear by a Ford F150 truck being operated by Kenneth Papay ("Kenneth"). (Doc. 1-1, ¶ 15). The impact sent the Prius into a ditch on the side of the road. (*Id.*, ¶ 16). Decedent was conscious at the scene but was pronounced dead at approximately 7:00 p.m. on August 14, 2020. (*Id.*, ¶¶ 20-25).

At all relevant times, the Prius that was being operated by decedent was covered by the Artisan commercial policy[1], which had UIM coverage in the amount of $1,000,000. (Doc. 1-1, ¶28). The Ford F150 that was being operated by Kenneth was owned by Max and Cecelia Papay. (Doc. 1, ¶¶12-13). The Ford F150 was listed as a covered auto under a policy of liability insurance, number 55PHE807622, issued by the Hartford to Max and Cecelia Papay ("Hartford policy"), effective from April 1, 2020, to April 1, 2021.[2] (Doc. 1, ¶16). The Hartford policy had a liability coverage limit

---

[1] The Artisan policy was attached to the complaint as Exhibit 5. (Doc. 1-5).
[2] The Hartford policy was attached to the complaint as Exhibit 3. (Doc. 1-3).

for bodily injury in the amount of $100,000 each person and $300,000 each accident. (*Id.*, ¶17).

Max Papay, LLC, a business entity whose members were Max and Cecelia Papay, was issued a policy of liability insurance, number 6E15841, by EMC Property & Casualty Company, for the effective policy period of February 1, 2020, to February 1, 2021.[3] (*Id.*, ¶¶14, 21). The EMC policy has a liability coverage limit for bodily injury in the amount of $1,000,000. (*Id.*, ¶21).

**B. Kansas Proceeding**

On July 29, 2022, the initial complaint for the wrongful death and survival of decedent as a result of the motor vehicle accident was filed in the United States District Court for the District of Kansas, to wit: *Throgmorton v. Papay, et al.*, 2:22-cv-02301.[4] The defendants in the Kansas action were identified as: (1) Kenneth Papay; (2) Max Papay, LLC doing business as Max's Water Service; (3) Max Papay; and, (4) Cecelia Papay. (KsD 1).

The second amended complaint ("SAC") was filed in the Kansas proceeding on August 11, 2022. (Doc. 1-2; KsD 8). The SAC alleged that the Ford F150 that struck decedent was owned by Max and/or Cecelia Papay and was being driven by Kenneth, with permission. (Doc. 1-1, KsD 8, ¶13). The SAC further alleged that at the time of the accident, Kenneth was acting within the course and scope of his employment with Max Papay, LLC. (Doc. 1-1, KsD 8, ¶14). Finally, the SAC alleged that Kenneth

---

[3] The EMC policy was attached to the Complaint as Exhibit 4. (Doc. 1-4).
[4] The undersigned has conducted a comprehensive review of the Kansas case on PACER and notes that the case was filed on July 29, 2022, and was terminated on June 8, 2023. Documents identified from the Kansas proceeding will be designated as "KsD".

"negligently operated the Ford F150" and contended that the decedent's "physical injuries, mental anguish, grief, shock, knowledge of pending death, and conscious pain and suffering" as well as his death, were "as a direct and proximate result of the negligence" of Kenneth." (Doc. 1-1; KsD 8, ¶¶17, 23).

On August 23, 2023, U.S. District Court Judge Julie Robinson granted Plaintiff's Application for Partial Wrongful Death and Survival Settlement in the Kansas action.[5] Within the Memorandum and Order, Judge Robinson set forth "Findings of Fact", wherein she indicated the suit was filed, "alleging Kenneth Papay negligently operated the pick-up and did so in the course and scope of employment with Max Papay, LLC and/or Max and Cecelia Papay." (¶6). However, Judge Robinson further pointed out that "Max Papay, LLC and Max and Cecelia Papay denied any liability to plaintiffs" and that "it would be difficult to prevail on the claim against Max Papay, LLC and Max and Cecelia Papay." (¶¶ 7, 8). Nevertheless, "the parties negotiated a settlement" with their insured, EMC "on a compromise basis for $575,000".[6]

**C. Declaratory Judgment Action**

On July 17, 2023, Artisan initiated this action by filing its Complaint for Declaratory Judgment seeking a declaration that there is no UIM coverage available pursuant to the Artisan policy issued to Giant City Transport LLC for the claim brought by defendants. (Doc. 1). Specifically, Artisan contended that the sum of the

---

[5] This Court has thoroughly reviewed the Memorandum and Order prepared by U.S. District Judge Julie Robinson. (Doc. 36, *Throgmorton v. Papay, et al.*, 22-cv-2301).
[6] Pre-suit, Hartford had tendered its policy limits of $100,000 on behalf of Kenneth Papay.

policy limit under the Hartford policy, $100,000, and the sum of the policy limit of the EMC policy, $1,000,000, totaled $1,100,000 coverage, which exceeded the $1,000,000 limit of UIM coverage available under the Artisan policy, resulting in the no UIM coverage. (*Id.*). Defendants filed a two-count counterclaim; in Count I, they seek a judgment stating that they are (a) entitled to make a claim for underinsured motorist benefits against Artisan and (b) Artisan must settle or engage in arbitration of the underinsured motorists claim. (Doc. 16, p. 9). Defendants have moved for partial summary judgment on Count I (Doc. 31), and Artisan has filed a Motion for Judgment on the Pleadings (Doc. 26).

## LEGAL STANDARD

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, no issue remains for trial if "sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)). The non-movant cannot simply rely on its pleadings; the non-movant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24).

## ANALYSIS

This Court exercises diversity jurisdiction over this case.[7] Federal courts sitting in diversity apply federal procedural law and the substantive law of the state in which the court sits. *See Nat'l American Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015). "Questions of insurance-policy interpretation are substantive." *Id.* Accordingly, when analyzing the terms of an insurance policy,

---

[7] The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. (Doc. 1, ¶7). Plaintiff Artisan is a Wisconsin corporation with its principal place of business in Ohio. (*Id.*, ¶2). Defendant Throgmorton is a citizen of Michigan. (*Id.*, ¶3). Defendant Oschmann is a citizen of Virginia. (*Id.*, ¶5).

a federal court sitting in diversity must apply state law. *See Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015).

The Court's primary objective is to ascertain and *give effect to the parties' intentions, as expressed in the policy's language. Id.* at 777–78. Under Illinois law, an insurance policy is interpreted as a contract. *See Westfield*, 796 F.3d at 777 (citing *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). The Court must therefore construe the policy as a harmonious whole, taking into consideration the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subjects insured, and the purposes of the contract. *Westfield*, 796 F.3d at 778 (citing *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1078 (Ill. 1993)). If the policy language is unambiguous and does not offend public policy, then the Court must apply the provision as written. *See Netherlands Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013). Ambiguous language is construed liberally in favor of the insured; however, courts will find an ambiguity only if the policy language is susceptible to more than one reasonable interpretation. *See Commonwealth Ins. Co. v. Stone Container Corp.*, 351 F.3d 774, 778 (7th Cir. 2003). Disagreement among the parties as to a provision's meaning does not establish an ambiguity in a policy's language. *Id.* Nor are policy terms ambiguous because the parties "can suggest creative possibilities for their meaning." *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 340 (7th Cir. 2010) (citing *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 860 N.E.2d 307, 314 (Ill. 2006); *Shelton v. Andres*, 478 N.E.2d 311, 314 (Ill. 1985)).

### A. Underinsured Motorist Coverage

The purpose of underinsured motorist coverage is "to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 653 (Ill. App. Ct. 2011) (internal quotation omitted). The coverage "cover[s] the shortfall between the amount of insurance contracted for and the amount received from the liable driver." *Cummins v. Country Mut. Ins. Co.*, 687 N.E.2d 1021, 1023 (Ill. 1997).

Section 143 a-2 of the Illinois Insurance Code provides, in pertinent part:

> "'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured * * * for which the sum of the limits of liability under all bodily injury liability insurance policies * * * is *less* than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies * * *. (Emphasis added.)

Ill. Rev. Stat. 1991, ch. 73, par. 755a–2(4). Similarly, the Artisan policy at issue defines "underinsured auto" as:

> "[a] land motor vehicle to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the coverage limit for Uninsured/Underinsured Motorist Bodily Injury Coverage."

(*See* Doc. 1-5, p. 39).

The first question for the undersigned is whether the Ford F150 that was being driven by Kenneth at the time of the Kansas accident qualifies as an underinsured auto. It is undisputed that the Ford F150 is a land motor vehicle. It

is also undisputed that the Ford F150 was covered by a bodily injury liability policy via The Hartford for $100,000 per person and $300,000 per accident. What is disputed; however, is whether any other policy is applicable, and if the sum(s) of any applicable policy(ies) is less than the coverage limit of the Artisan policy.

Artisan contends that there was other coverage on the Ford F150, i.e., the Max Papay LLC business policy with EMC in the amount of $1,000,000. (Doc. 26). In fact, Artisan contends that the "tort complaint triggered liability coverage under the EMC policy"; however, that bare assertion is preposterous. The mere fact that someone is named in a complaint does not trigger liability; were it that simple, lawsuits would identify countless defendants without any evidence to support liability.

In their brief, Artisan asserts that there is no UIM coverage available because the combined $1,100,000[8] coverage under the Hartford and EMC policies exceeded the Artisan policy limit of $1,000,000 (*Id.*), while defendants argue there is $900,000 UIM coverage available which is the difference of the Artisan policy limit of $1,000,000, less the $100,000 paid by the Hartford in the Kansas proceeding. (Docs. 31, 32).

The tortfeasor in the Kansas proceeding was Kenneth. Of that, there is no question. Kenneth drove the car that struck, and ultimately killed, decedent. Moreover, the Hartford accepted liability and tendered its policy limits prior to the filing of the lawsuit. (KsD. 3).

---

[8] The Hartford liability policy limit of $100,000 plus the EMC policy limit of $1,000,000.

As to whether there was any vicarious liability, there is not a scintilla of evidence to support that accusation.[9] Indeed, an unsubstantiated statement in a police report is hearsay, not evidence, and the all the evidence points to the contrary. Indeed, Max Papay LLC denied in its answer that Kenneth was acting in the course and scope of his employment or agency … denied that Kenneth was acting in furtherance of the business … and denied that Kenneth was acting with the express or implied consent of [the business]." (KsD.15). Additionally, Kenneth attested in his discovery responses that he was not driving in the course of employment or agency at the time of the crash and discovery of Max Papay LLC indicated that Kenneth was not an employee nor was he acting within the course and scope of any employment. (Doc. 29-9; *see also* KsD. 32-1). Furthermore, the F150 was not a listed vehicle under the EMC policy nor did the F150 fall into one of the other provisions that enumerated coverage, even though the policy specifically identified 35 vehicles. (Doc. 1-4). Moreover, the vehicle did not have any signage or affiliation with Max Papay, LLC or Max's Water Service. (Docs. 29-9).

Artisan references the settlement amount of $545,000 and claim that "it is clear that both policies paid to settle for the vehicle's operation" (Doc. 26, p. 9), but again, that position is unfounded. It is not clear to this Court that the settlement by EMC was for Kenneth's liability nor is it clear that the settlement was a legal fiction. Parties settle claims every day for a multitude of reasons. There is no evidence to support that the $545,000 was paid as a result of Kenneth's liability

---

[9] At the scene of the accident, witnesses indicated that Kenneth was "driving for employer"; however, the evidence rebuts those unsubstantiated allegations.

imputed to Max Papay, LLC. To the contrary, Judge Robinson found that Max Papay, LLC and Max and Cecelia Papay settled on a compromise basis the claims against them. (KsD. 36). This Court concurs.

To answer to the question as to whether there is UIM coverage available, the undersigned must now look at the applicable policy limits – of the Hartford, as the tortfeasor's insurance, and the decedent's available limits. As set forth *infra*, under the Illinois Insurance Code, "the limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, *less those amounts* actually recovered under the applicable bodily injury insurance policies, bonds or other security *maintained on the underinsured motor vehicle*." 215 ILCS 5/143a-2 (emphasis added). "[Illinois] law is clear that an insurer is liable for underinsured motorist coverage only for the difference between the amount recovered from the *tortious driver* and the stated limit for underinsured motorist coverage." *Banes v. Western States Ins. Co.*, 616 N.E.2d 1021, 1026 (Ill. App. Ct. 1993) (emphasis added) (citations omitted). As such, this Court determines there is $900,000 UIM coverage available under the Artisan policy, which is $1,000,000 less the $100,000 paid by the Hartford on behalf of the tortfeasor, Kenneth.

### B. Setoff Application

Now that the undersigned has determined that there is UIM coverage, the Court must determine if Artisan is entitled any set-offs – first, in the amount of $100,000 paid by the Hartford, and second in the amount of the $575,000 compromise settlement paid by EMC on behalf of its insureds, Max Papay, LLC,

and Max and Cecelia Papay. Illinois courts routinely determine the insurer's liability to its insured "before the factual question of damages is resolved." *See Illinois Emcasco Ins. Co. v. Tufano*, 63 N.E.3d 985, 997 (Ill. App. Ct. 2016) (noting that "[i]t is not uncommon in cases like this for the liability question to be determined by the trial court on a dispositive motion at trial, before the factual question of damages is resolved").

The Appellate Court of the Fifth District of Illinois has held that "the amounts that were not paid on behalf of the UIM cannot be deducted". *See Farmers Automobile Ins. Ass'n v. Coulson*, 931 N.E.2d 1257 (Ill. App. Ct. 2010). In *Coulson*, the Appellate Court for the Fifth District of Illinois analyzed the public policy of placing insureds in the same position as if the UIM had been fully insured, noting the following:

> "If we allowed Farmers to deduct the amounts paid to [the] [insured] by the property owner and the franchisee of the [ ] restaurant, this would frustrate the public policy of placing [the] [insured] in the same position as if [the tortfeasor], the UIM, had been fully insured. *See Sulser v. Country Mutual Insurance Co.*, 147 Ill.2d 548, 555, 169 Ill.Dec. 254, 591 N.E.2d 427 (1992) (recognizing that the purpose behind UIM coverage is the same as for uninsured-motorist coverage—"to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance"). *Id.*

At least one recent decision further supports the public policy of placing insureds in the same position as if at fault motorist had been fully insured. In *DeStefano v. Farmers Auto. Ins. Ass'n*, 55 N.E.3d 677 (Ill. App. Ct. 2015), the insured was hit by a United States postal worker. *Id.* at 678. The postal worker had a single limit policy of $25,000 with Progressive Insurance Company

("Progressive"). *Id.* Progressive paid its policy limit and the United States paid $49,900 "in exchange for a release of [the] [insured's] claims against the United States and its agents and employees." *Id.* Also, the insured was covered under an auto liability policy with Farmers which included UIM coverage in the amount of $100,000. *Id.* After making a demand for UIM benefits, Farmers asserted it was entitled to a setoff from both the $25,000 paid by Progressive and the $49,900 paid by the United States. *Id.* On appeal, the only issue raised was "whether the trial court erred in entering judgment in favor of [the] [insured] in the amount of $75,000." *Id.* "According to Farmers, both the $25,000 paid by Progressive and the $49,900 paid by the United States were paid on behalf of the underinsured motorist, [the postal worker], which allows Farmers to deduct those amounts from its UIM limit." *Id.* at 679. Not only did the Court in *DeStefano* find that *Coulson*, 931 N.E.2d 1257, supports the insured's position, but the *DeStefano* Court also noted that "[i]f we allowed Farmers to deduct the amount paid by the United States to [the] [insured], we would frustrate the public policy behind UIM coverage, which is to place the insured in substantially the same position he would have occupied if the tortfeasor carried adequate insurance." *Id.* at 680 (citations omitted).

Section 143a-2(4) of the Illinois Insurance Code limits the amounts deductible from UIM coverage to the amount paid on behalf of the underinsured motor vehicle. This reading of the Illinois Insurance Code is not only consistent with *Coulson*, 931 N.E.2d 1257, and *DeStefano*, 55 N.E.2d 1257, but also consistent with "the public policy behind UIM coverage, which is to place the insured in

substantially the same position he would have occupied if the tortfeasor carried adequate insurance." *DeStefano*, 55 N.E.3d at 680. Accordingly, Artisan is entitled to a setoff in the amount of $100,000 that was paid by the Hartford on behalf of Kenneth, but not to a setoff in the amount of the compromise settlement of $545,000.

Before concluding this discussion, the Court notes that neither party has moved for summary judgment as to *Artisan's* claim seeking declaratory judgment; the pending Motion for Partial Summary Judgment (Doc. 31) was brought by the *Defendants* in relation to their own counterclaim requesting declaratory judgment. Defendants request, as part of their counterclaim, that the Court declare that they are entitled to make a claim for underinsured motorist benefits against Artisan. (Doc. 16, p. 9). Conversely, Artisan requests that the Court declare that there is no underinsured motorist coverage pursuant to the policy. (Doc. 1, p. 5). However, Artisan's claim is a mirror image of Defendants' counterclaim; therefore, both claims rise and fall together. *See Automatic Liquid Packaging, Inc. v. Dominik*, 852 F.2d 1036, 1038 (7th Cir. 1988) (holding that two mirror image claims are the same claim); *see also SYNY Logistics, Inc. v. Great Lakes Ins. SE*, 696 F. Supp. 3d 504, 513 (N.D. Ill. 2023) (*sua sponte* granting summary judgment on a counterclaim that was the mirror image of a claim where summary judgment had been granted).

## Conclusion

In accordance with the above discussion, Defendants' Motion for Partial Summary Judgment on Count I of their counterclaim (Doc. 31) is **GRANTED**.

Artisan's claim is **DISMISSED with prejudice.** As Artisan's claim has been dismissed, its Motion for Judgment on the Pleadings (Doc. 26) is, therefore, **DENIED as moot**. Artisan shall comply with Defendants' arbitration demand regarding the UIM claim. Artisan's liability shall be capped at the UIM policy limit, less the amount already paid by Kenneth's insurance with The Hartford.

**IT IS SO ORDERED.**

**DATED:  March 7, 2025**

s/ *Stephen P. McGlynn*  
**STEPHEN P. McGLYNN**  
**U.S. District Judge**